UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER W. HESSE, and NATHANIEL OLSON,

Plaintiffs,

v.

SPRINT SPECTRUM L.P. d/b/a SPRINT PCS, and SPRINT NEXTEL CORPORATION.

Defendant.

CASE NO. C06-0592-JCC

ORDER

This matter comes before the Court on Defendant's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff Olson's Motion to Dismiss Defendants' Insufficient Defense as a Basis for Federal Jurisdiction.[1] Having carefully considered the parties' relevant oppositions, replies and other submissions and determined that oral argument is not necessary, the Court hereby rules as follows.

//

//

---

[1] Defendant submitted substantially the same motion to dismiss in both *Hesse* (Dkt. No 12 in C06-0592-JCC) and *Olson* (Dkt. No. 18 in C06-1127-JCC) prior to this Court's consolidation of those two matters. Plaintiff Olson also submitted a motion to dismiss Defendant's defense of preemption (Dkt. No. 10 in C06-1127-JCC) that also asked the Court to resolve the preemption issue. The Court will address all of these motions simultaneously.

ORDER – 1

## I. BACKGROUND

The Washington Code prohibits businesses from levying a Business and Occupation tax (hereinafter "B & O tax") on consumers. Wash. Rev. Code § 84.04.500. Rather, such taxes may only "constitute a part of the operating overhead" of such businesses. *Id.* Plaintiffs assert that Defendant Sprint Spectrum L.P. (hereinafter "Sprint") violated this section by assessing its customers a B & O tax as a separate line-item on their bills. Sprint moved to dismiss Plaintiffs' complaints on the ground that their state law claims are preempted by federal law under 47 U.S.C. § 332(c)(3)(A), and Plaintiff Olson separately moved to have this defense dismissed.

## II. ANALYSIS.

### A. *Sprint's Motion to Dismiss*

Washington's prohibition on levying the B & O tax is, in effect, a line-item regulation. While § 84.04.500 prevents the "levying" of the B & O tax on purchasers or customers, it does not prevent businesses from recouping the costs of the tax from their customers in the form of higher overall fees for services. Wash. Rev. Code § 84.04.500; *Nelson v. Appleway Chevrolet, Inc.*, 121 P.3d 95, 103 (Wash. Ct. App. 2005) ("[T]he economic burden of a tax is usually passed on the customers, but that does not mean that legislatures cannot design statutes to set forth the manner in which the pass-through must take place. Here, RCW 82.04.500 provides that the B & O tax can be added to operating overhead but cannot be passed on to the customer as a tax.") Since the regulation allows businesses to raise a customer's overall fees but does not allow the businesses to list a specific fee assessment for the tax on a customer's bill, the tax is functionally a line-item regulation.

The issue in this case is whether federal law preempts such line-item regulations. The answer to that question depends on the meaning of the word "rate" and "other terms of service" in the Federal Communications Act (FCA). The Act preempts states from regulating "the rates charged by any commercial mobile service or any private mobile service," while allowing states to regulate "the other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3)(A). Unfortunately, this

ORDER – 2

Section "never states what constitutes rate and entry regulation or what comprises other terms and conditions of wireless services" and thus "leaves its key terms undefined." *Cellular Telecomm. Indus. Ass'n v. F.C.C.*, 168 F.3d 1332, 1336 (D.C. Cir. 1999). Sprint contends that Washington's prohibition on the assessment of its B & O tax constitutes "rate" regulation and is thus preempted under Federal Law. Plaintiffs argue that it constitutes "other terms" of service that is within the purview of state regulation.

The FCC itself has already weighed in on this question. It found that "state regulations requiring or prohibiting the use of line items—defined here to mean a discrete charge identified separately on an end user's bill—constitute rate regulation and, as such, are preempted under section 332(c)(3)(A) of the Act." *Second Report and Order in re Truth and Billing*, 20 F.C.C.R. 6448, 6462 (2005).

This Court must generally give deference to the FCC's interpretation of an ambiguous statute within its jurisdiction. *Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.*, 423 F.3d 1056, 1067 (9th Cir. 2005) (quoting *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)). Such *Chevron* deference is due if (1) the plain language of the statute is ambiguous or silent on the issue at hand and (2) the agency's interpretation is based on a permissible interpretation of the statute. *Chevron*, 467 U.S. at 842-43.

As Judge Zilly of this District has previously explained, with regard to the first prong of the *Chevron* analysis, it is not clear from the plain language of § 332 whether regulation of "rates" encompasses regulation of specific line items. *Peck v. Cingular Wireless, LLC*, No. C06-0343-TSZ, slip op. at 4 (W.D. Wash. Oct. 24, 2006). The ordinary meaning of the word rate is "an amount paid or charged for a good or service." *Black's Law Dictionary* (8th ed. 2004). Thus, in the context of a cellular phone service contract the word "rate" could refer either to the base rate of the carrier or to the overall amount a customer pays for service. *Peck*, No. C06-0343-TSZ at 4. Here, for example, the state prohibits businesses from charging its customers for a B & O tax, and thus in some sense prohibits the specific charges or "rates" that these businesses can assess. At the same time, the statute allows the economic burden of the tax to be passed onto customers in the form of higher overall service fees to recoup

ORDER – 3

overhead, and thus in another sense the prohibition does not alter the overall charges or "rates" businesses may require of their customers. Thus, regardless of which interpretation of the word "rates" is preferable, there certainly is ambiguity in the statute's usage of the term.[2]

Turning to the second prong of the *Chevron* analysis, the FCC's interpretation of "rates" is reasonable. First, it deals with one of the two plausible interpretations of rates outlined above. *See Second Report and Order in re Truth and Billing*, 20 F.C.C.R. at 6463. ("State regulations that prohibit a CMRS [Commercial Mobile Radio Service] carrier from recovering certain costs through a separate line item, thereby permitting cost recovery only through an undifferentiated charge for service, clearly and directly affect the manner in which the CMRS carrier structures its rates.")]. Second, the FCC's interpretation of "rates" is consistent with the goals of regulation on a national level because "[a] CMRS carrier forced to adhere to a varying patchwork of state line item requirements, which require costs to be broken out or combined together in different manners, would be forced to adjust its rate structure from jurisdiction to jurisdiction." *Id.* at 6464.

Accordingly, under the two-part *Chevron* framework, the FCC's interpretation of the term "rates" in § 332 is entitled to deference.

Plaintiffs dispute the application of the FCC's interpretation of *Second Report and Order in re Truth and Billing* to the instant case, arguing that Washington's B & O tax is a tax of general applicability rather than an attempt to regulate cellular telephone rates. (Pl.'s Opp'n 11 (Dkt. No. 19 in C06-0592-JCC)). Plaintiffs base their argument on the language of the relevant FCC ruling, which states that "no action we propose will limit states' ability to enforce their own generally applicable consumer protection laws." (*Id.* at 12 (quoting *Second Report and Order in re Truth and Billing*, 20 F.C.C.R. at

---

[2]This Court recognizes that the Eleventh Circuit came to a different conclusion, and respectfully disagrees with its opinion. *See Nat'l Ass'n of State Utility Consumer Advocates v. F.C.C.*, 457 F.3d 1238, 1254 (11th Cir. 2006) ("The language of section 332(c)(3)(A) *unambiguously* preserved the ability of the States to regulate the use of line items in cellular wireless bills" (emphasis added) (modified on reh'g, 468 F.3d 1272 (11th Cir. 2006))).

ORDER – 4

6450).) It is true that § 82.04.500 does apply generally to businesses in Washington and does not single out cellular phone companies. However, Plaintiffs misread the FCC's opinion regarding the FCA's preemptive effect as to such generally applicable laws. The FCC wrote: "we emphasize that no action that we take in this Second Report and Order and the Declaratory Ruling below limits states' authority to enforce their own generally applicable consumer protection laws, *to the extent such laws do not require or prohibit use of line items*, nor limits a state's ability to assess taxes or create, for example, a state-specific universal service fund to which carriers must contribute." *Id.* at 6458 (emphasis added). Here, the generally applicable law prohibits the use of specific line items and to the extent that it does so it is preempted.

        Plaintiffs argue that the two different complaints from the consolidated *Hesse* and *Olson* cases are different. They contend that the *Hesse* claims only allege a violation of Washington law whereas the claims in *Olson* also include breach of contract claims. (See Pl.'s Supplemental Brief Discussing the Effect of Consolidation on Pending Motions 4-7 (Dkt. No. 40 in C06-0592-JCC).) To the extent that the contract claims are predicated on a violation of § 82.04.500 they are preempted.[3] Thus, for example, Plaintiffs' claim outlined in ¶ 4.2 of the *Olson* Complaint is preempted because it states that Sprint is in breach for "improperly charging and collecting a 'Washington State B & O Tax Surcharge' [] in violation of RCW 82.04.500 " (*See Olson* Compl. 7 (Dkt. No. C06-1127-JCC)) because there could be no breach of contract under this theory without there first being a violation of § 82.04.500.

        However, ¶ 4.1 of that Complaint states a subtly different breach of contract theory. It alleges that "Defendant breached the contract for service with Plaintiff and the class members by billing and charging a 'Washington State B & O Tax Surcharge' apart from and in addition to the agreed calling plan rate." This claim alleges that Sprint agreed to provide service at a specified rate and then provided service at a

---

[3] This allegation would also not state a valid violation of Washington law because the Consumer Protection Act, by its own terms, does not apply where its application would be preempted by federal law. *See* Wash. Rev. Code § 19.86.170.

ORDER – 5

higher rate over and above that which Plaintiffs contracted to pay. That the amount is labeled a "Washington State B & O Tax Surcharge" is immaterial to the claim. The argument is similar to a case in which parties to a sales contract agree on an overall price that includes sales tax and, in violation of this agreement, the seller nevertheless bills the buyer an additional amount above the agreed-upon rate under the guise of collecting a "sales tax." Such "breach of contract or false advertising claims [are] appropriately reviewable by a state court." *In re Wireless Consumers Alliance, Inc.* 15 F.C.C.R. 17021, 17035 (2000).

Thus, the majority of Plaintiffs' claims are preempted under the FCA. Only those breach of contract claims that do not rely on an alleged violation of § 82.04.500 remain.

    *B.    Plaintiffs' Motion for Leave to Amend their Complaint*

Plaintiffs finally ask the Court for leave to amend their complaint to state a claim under federal law should the Court rule against them on the preemption issue. (Pl.'s Opp'n 15-18 (Dkt. No 19 in C06-0592-JCC)). Federal Rule of Civil Procedure 15's directive that such motions to amend "shall be freely given when justice so requires" is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Accordingly, Plaintiff's motion for leave to amend is hereby GRANTED.

    *C.    Sprint's Motion to Strike*

Sprint moved to strike portions of Plaintiffs' supplemental brief because Sprint disputes Plaintiffs' contention that it is "undisputed" that Sprint did not disclose the B & O tax to consumers. (Dkt. No. 42.) The Court has noted Sprint's objection but declines to strike any portion of Plaintiffs' brief at this time.

//
//
//
//
//

ORDER – 6

### III. CONCLUSION

Sprint's Motion to Dismiss is hereby GRANTED IN PART and Plaintiff's Motion to Dismiss Defendant's Insufficient Defense as a Basis for Federal Jurisdiction is DENIED IN PART: all of Plaintiffs' claims except those arising from breach of contract not predicated on a violation of § 84.04.500 are hereby DISMISSED.

Plaintiffs' Motion for Leave to Amend their Complaint is hereby GRANTED.

Sprint's Motion to Strike Portions of Plaintiffs' Supplemental Brief is DENIED.

SO ORDERED this 18th day of January, 2007.

John C. Coughenour
United States District Judge

ORDER – 7