1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATHANIEL OLSON and
CHRISTOPHER W. HESSE,

                    Plaintiffs,                        CASE NO. C06-0592-JCC

        v.                                             ORDER

SPRINT SPECTRUM L.P. *d/b/a* SPRINT PCS,

                    Defendant.

        This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 175), and Defendant's Motion for Summary Judgment (Dkt. No. 176), together with responses and replies to each motion, and supporting affidavits and exhibits. Having carefully considered the papers filed, and determined that oral argument is unnecessary, the Court hereby GRANTS Defendant's Motion (Dkt. No. 176) and DENIES Plaintiffs' Motion (Dkt. No. 175), as follows.

**I.      BACKGROUND**

        In this action, Plaintiffs Christopher Hesse and Nathaniel Olson, individually and on behalf of a similarly situated class,[1] assert common law claims of breach of contract and unjust enrichment and

_____

        [1] The class is defined as all current and former Washington State wireless service customers of Sprint, who have been charged and paid to Sprint a Washington B&O tax surcharge. (Order May 18, 2007 (Dkt. No. 117 at 11).)

ORDER – 1

further allege that Defendant Sprint[2] violated the Washington Consumer Protection Act, WASH. REV. CODE 19.86.010 *et seq*. (Dkt. No. 118 at 9–10.) Plaintiffs' allegations all relate to a Washington B&O tax surcharge,[3] which they contend Sprint impermissibly billed to its Washington customers.

Plaintiffs originally brought two separate class actions, filed in state court in March and July 2006. Sprint removed both actions to federal court, where they were subsequently consolidated. The Court certified the class on May 18, 2007; Plaintiffs' Consolidated Complaint was filed soon thereafter on June 8; and Sprint's Answer followed on June 22. (Dkt. Nos. 117, 118, 121.) Sprint's Answer asserted several affirmative defenses, including *res judicata* (Dkt. No. 121 at 14), and more specifically, "application of the doctrine of settlement." (*Id.* at 15.)

Meanwhile, in February 2006, Sprint entered into a Settlement Agreement in a different class action that had been pending, in one form or another, in the Missouri and Kansas state courts, since 2002. (Dkt. No. 178-3 at 2–3.) That Agreement created two distinct settlement classes; relevant here is the *Benney* Settlement Class, which the Agreement defined as:

> all current and former Sprint wireless customers in the United States who were customers for any time during the period December 1, 2000 to the Effective Date,[4] and who were charged

---

[2] Sprint PCS provides wireless and commercial mobile radio services in Washington State. It is a limited partnership organized under the laws of Delaware, with its principal place of business in Kansas. (*See* Dkt. No. 186 at 2.)

[3] Washington imposes a Business and Occupation ("B&O") tax "for the act or privilege of engaging in business activities" in the state. WASH. REV. CODE 82.04.220. The B&O tax is an excise tax. 1B KELLY KUNSCH ET AL., WASHINGTON PRACTICE: METHODS OF PRACTICE § 72.7 (1997).

[4] "'Effective Date' . . . means the termination of the Actions after . . . [t]his Class Action Settlement Agreement is approved in all respects by the Court; and . . . [a] Final Order, entering judgment of dismissal with prejudice against all Class Plaintiffs and Settlement Class members who do not properly opt out . . . has been filed, and the time for the filing of any appeals has expired, or if there are appeals, approval of the settlement and judgment has been affirmed in all respects by the appellate court of last resort to which such appeals have been taken and such affirmances are no longer subject to further appeal or review." (Agreement 9 (Dkt. No. 178-3 at 10).)

ORDER – 2

Regulatory Fees (as defined in paragraph 1.3(a)).[5]

(*Id*. at 15.) The Settlement Agreement was ultimately approved in an order issued by Judge Duncan of the District Court of Wyandotte County, Kansas, on November 8, 2006. (Dkt. No. 178-2 at 2.) That order defined the *Benney* Settlement Class as:

> all current and former Sprint-branded ("Sprint" or "Sprint PCS") wireless telephone customers in the United States who were customers for any time during the period December 1, 2000 to the Effective Date as defined in the Settlement Agreement, and who were charged Regulatory Fees (as defined in the Settlement Agreement).

(*Id*. at 6.) In approving the Settlement Agreement, the court found that Sprint had provided notice "far exceed[ing] the minimum standard necessary" to potential settlement class members. (*Id*. at 13.) Approximately 425,000 current or former Sprint customers submitted claim forms, and approximately 103 persons or entities objected to the Settlement Agreement. Roughly twenty current or former Sprint subscribers elected to opt out of the Settlement Class. (*Id*. at 10.) The settlement became effective on March 8, 2007, when the final appeal by an objector was dismissed. (Dkt. No. 178-5 at 2.)

Sprint moves for summary judgment arguing, *inter alia*, that Plaintiffs' claims are barred by the terms of the *Benney* Settlement Agreement and the court order approving that Agreement. Plaintiffs make several arguments in opposition, each of which the Court addresses, below.

//

//

//

---

[5] "'Regulatory Fees' means: (i) the 'USA Regulatory Obligations & Fees' fee or surcharge on subscriber invoices that Sprint charged subscribers for the cost of implementing federally mandated programs for Enhanced 911 ('E911') emergency calling Phase II and federal Universal Service Fund contributions ('USF'); (ii) 'Federal Telephone Number Pooling' fee or surcharge on subscriber invoices that Sprint charged subscribers to recover costs of implementing the federally mandated program for wireless number portability; (iii) 'Federal USF,' 'Federal E911' and 'Federal Wireless Number Pooling and Portablility' fees or surcharges on subscriber invoices that Sprint charged wireless subscribers to recover costs of implementing federally mandated programs for wireless number pooling and portability, federal Universal Service Fund contributions, and Enhanced 911 emergency calling Phase II." (Agreement 7–8 (Dkt. No. 178-3 at 8–9).)

ORDER – 3

## II.     LEGAL STANDARD

The question before the Court is whether Plaintiffs' claims are precluded by the Settlement Agreement approved by a Kansas state court in a separate class action against Sprint. Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Substantive law determines which facts are material, *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987), and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *see also T.W. Elec. Serv.*, 809 F.2d at 630. To discharge this burden, the nonmoving party cannot rely merely on allegations or denials in its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.*

Under the Full Faith and Credit Act, the "judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. "This statute has long been understood to encompass the doctrine[] of res judicata, or 'claim preclusion' . . . ." *San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 336 (2005) (internal quotation marks omitted). Judgments of state courts in class action proceedings fall squarely within this mandate and, as such, must be given the same preclusive effect in federal court that they would be accorded in the courts of the rendering state. *Matsushita Elec. Indus. Co., Ltd., v. Epstein*, 516 U.S. 367, 373–74 (1996). Whether the doctrine of claim preclusion applies is a question of law, properly resolved on summary judgment. *See Stanfield v. Osborne Indus., Inc.*, 949 P.2d 602, 608 (Kan. 1997).

//

//

ORDER – 4

III.     **ANALYSIS**

      *A.     Hesse and Olson Are Members of the* **Benney** *Settlement Class*

      The *Benney* Settlement Class is comprised of all Sprint wireless customers in the United States who: (1) were customers for any time during the period December 1, 2000 to March 8, 2007; and (2) were charged "regulatory fees." Regulatory fees are defined in the Settlement Agreement as fees or surcharges on subscriber invoices, specifically including "USA Regulatory Obligations & Fees," "Federal E911" and "Federal Wireless Number Pooling and Portablility" fees or surcharges. (Dkt. No. 178-3 at 8–9.)

      That Plaintiffs are members of the *Benney* Settlement Class is evident. Plaintiffs attach to their motion for partial summary judgment a Sprint PCS wireless invoice addressed to Hesse for the billing period ending January 14, 2002, which includes an assessment for "USA Regulatory Obligations & Fees." (Dkt. No. 175-2 at 50.) Similarly, Sprint submits a wireless invoice addressed to Olson dated September 23, 2006, which includes charges for "Federal Wireless Number Pooling and Portability," and "Federal E911." (Dkt. No. 72 at 10.) That the current action challenges the imposition of a "surcharge" rather than a "regulatory fee" is irrelevant to class membership—Plaintiffs cannot and do not deny that at some point during the period December 1, 2000 to March 8, 2007 they were charged regulatory fees as defined in the Settlement Agreement.

      *B.     Hesse and Olson Had Notice of the* **Benney** *Settlement and Did Not Opt Out of the Class*

      Plaintiffs received notice of the proposed Settlement Agreement and failed to opt out of the settlement class. Hesse was sent notice of the proposed settlement in an insert enclosed with his May 15, 2006 invoice, for which Sprint received payment on or around June 11, 2006. (Nevels Decl. ¶¶ 9, 10 (Dkt. No. 178).) That notice defined the *Benney* Settlement Class as "all current and former Sprint wireless telephone customers in the United States who were customers for any time during the period December 1, 2000 to the Effective Date, and who were charged Regulatory Fees." (Dkt. No. 178-6 at 8.)

ORDER – 5

It included an explanation of the "Legal Effect of the Settlement (Release of Claims)":

> Upon the Court's approval of the settlement . . . the class members who do not properly opt out of the proposed Settlement Classes, regardless of whether or not a claim for benefits is filed, will release and forever discharge Sprint . . . from any and all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, and costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, that have been, could have been, or in the future might be asserted in the *Benney* Lawsuit . . . or in any other court or proceeding which relate in any way to the allegations that defendants failed to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes . . . .

(*Id.*) Similarly, Olson, who received electronic invoices, was sent an e-mail containing an internet link to the notice of proposed settlement on or around July 21, 2006. (Riley Decl. ¶ 8 (Dkt. No. 179).) On July 24, 2006, the recipient of that email clicked on the link to the notice (*id.* at ¶ 12), which defined the *Benney* Settlement Class and explained the Legal Effect of the Settlement precisely as the paper notice quoted above. (Dkt. No. 178-6 at 12, 19.)

In approving the Settlement Agreement, Judge Duncan found that Sprint had provided notice "far exceed[ing] the minimum standard necessary" to potential settlement class members. (Dkt. No. 178-2 at 13.) Nevertheless, Plaintiffs argue that "notice was defective to the extent it purports to cover the B&O tax charge" because "nothing in the notice sent to Plaintiffs specified that the Washington B&O tax surcharge . . . was being settled in the Kansas court." (Pls.' Reply 3 n.3 (Dkt. No. 183).) Plaintiffs cite no authority to support their assertion that, in order to effectively release Sprint from liability for the claims brought in the instant action, the Notice of Proposed Settlement had to have specifically listed each and every surcharge, regulatory fee, or excise tax potentially covered by the settlement. Moreover, such a requirement would be impractical and would certainly discourage settlement, which would run contrary to the long standing policy of *encouraging* settlement—a policy Judge Duncan emphasized in approving the Settlement Agreement. (*See* Dkt. No. 178-2 at 12.) Plaintiffs' argument that notice was defective is without merit.

//

//

ORDER – 6

1

C.      *Sprint Did Not Waive the Defense of Preclusion*

2      Plaintiffs argue that Sprint waived any defense based on the *Benney* Settlement by not raising it

3 prior to moving for summary judgment, and as such, should be estopped from raising it now. As evidence

4 of waiver, Plaintiffs cite several documents filed, and appearances made, by Sprint, none of which

5 mention the *Benney* Settlement. Plaintiffs argue that these documents and court appearances evidence

6 Sprint's intention to waive any defense it may have had based on the *Benney* Settlement. (Pls.' Resp. 10

7 (Dkt. No. 185).) Moreover, Plaintiffs argue that "[t]here is no reason why Sprint could not have asserted

8 this defense earlier," and Sprint's failure to invoke the defense until now "has wasted this Court's time

9 and prejudiced the Plaintiffs and an entire class of Washington consumers." (*Id.*)

10      Contrary to Plaintiffs' assertion, Sprint's Answer to the Consolidated Complaint *did* assert a

11 defense based upon a prior settlement of claims. Among the several affirmative defenses set forth in

12 Sprint's answer were the defenses of *res judicata* (Dkt. No. 121 at 14), and more specifically,

13 "application of the doctrine of settlement." (*Id.* at 15.) Moreover, even if Sprint had failed to include a

14 preclusion defense in its Answer, in the Ninth Circuit a defendant may raise an affirmative defense for the

15 first time—whether or not that defense was specifically pled in the Answer—in a motion for summary

16 judgment, "at least where no prejudice results to the plaintiff." *Healy Tibbitts Const. Co. v. Ins. Co. of N.*

17 *Am.*, 679 F.2d 803, 804 (9th Cir. 1982). Here, Plaintiffs received notice of the proposed settlement (as

18 detailed above) in May and July of 2006, and were further put on notice when Sprint included the

19 defenses of *res judicata* and settlement in its Answer. Any costs thereafter incurred were at Plaintiffs'

20 peril.

21      Nor do the other documents filed and court appearances made by Sprint, which Plaintiffs list in

22 their Opposition, suffice to waive this affirmative defense. Because Sprint was well within its rights to

23 assert the defense for the first time upon motion for summary judgment, its failure to, for example, raise it

24 in an earlier motion to dismiss, or mention it at a status conference, or highlight it in its opposition to

25 class certification, simply cannot be interpreted as definitive evidence of Sprint's "voluntary or intentional

26 ORDER – 7

1    relinquishment" of its right to assert the defense. *See, e.g.*, *Royal Air Props., Inc. v. Smith*, 333 F.2d 568,

2    571 (9th Cir. 1964).

3        **D.    The Benney *Settlement Bars Plaintiffs' Claims***

4        Plaintiffs make several arguments that the release in the order approving settlement is not

5    applicable to the claims at bar; none are persuasive. The November 8, 2006 Settlement Order released

6    and discharged Sprint:

7            from any liability to each and every *Benney* Class Plaintiff and Settlement Class members, with the
            *sole exception* of those Settlement Class members who timely excluded themselves from the class
8            by filing a request for exclusion by the deadline set by the Court, arising from or relating to *any*
            *and all claims that were or could have been alleged* in the *Benney* matter, *including but not*
9            *limited to* claims which relate in any way to allegations that, on or before the Effective Date as
            defined in the Settlement Agreement, Sprint failed properly to disclose or otherwise improperly
10           charged for surcharges, regulatory fees or excise taxes, *including but not limited to* the
            Regulatory Fees, as set forth in Paragraph 22(a)(1) of the Settlement Agreement.
11
12   (Dkt. No. 178-2 at 18) (emphasis added). This release became effective on March 8, 2007, when the final

13   appeal by an objector was dismissed. (Dkt. No. 178-5 at 2.)

14       First, Plaintiffs contend that the Kansas court that approved the Settlement Agreement "lacked

15   subject matter jurisdiction over a claim that Washington consumers were improperly charged a

16   Washington B&O tax surcharge, which renders its judgment [approving the Settlement Agreement]

17   void." (Pls.' Reply 3 n.3 (Dkt. No. 183).) Plaintiffs make this argument in a single, unsupported footnote,

18   and it is without legal basis. Even if the Kansas state court could not have properly adjudicated Plaintiffs'

19   claims—if, for example, the claims at issue were within the exclusive jurisdiction of the federal

20   courts—the court nevertheless could have effectively approved a settlement that released claims that the

21   court itself did not have jurisdiction to decide. *Matsushita*, 516 U.S. at 369. In fact, the U.S. Supreme

22   Court flatly rejected Plaintiff's argument when it disapproved of a test applied by the Ninth Circuit "under

23   which the preclusive force of a state-court settlement judgment is limited to those claims that 'could . . .

24   have been extinguished by the issue preclusive effect of an adjudication of the state claims.'" *Id.* at 372.

25   The rule is clear: "Absent a partial repeal of the Full Faith and Credit Act, by another federal statute, a

26   ORDER – 8

1    federal court must give the judgment the same effect that it would have in the courts of the State in which

2    it was rendered." *Id.* at 369 (internal citations omitted).[6]

3         Perhaps Plaintiffs meant to argue that the Kansas court lacked *personal* jurisdiction over them;

4    however, the Kansas Supreme Court has held that, in determining whether a state court has jurisdiction

5    over nonresident plaintiffs in a class action, "[w]hat is important is that the nonresident plaintiffs be given

6    notice and an opportunity to be heard and that their rights be justly protected by adequate

7    representation." *Shutts v. Phillips Petroleum Co.*, 567 P.2d 1292, 1305 (Kan. 1977). The "minimum

8    contacts" standard applicable when determining whether a court has personal jurisdiction over a

9    nonresident *defendant*, simply does not apply. *Id.* As discussed in depth above, Plaintiffs were given

10   effective notice of the proposed settlement agreement. Plaintiffs make no argument that they were not

11   offered an opportunity to be heard, and the fact that approximately 103 persons or entities objected to the

12   Settlement Agreement and roughly twenty Sprint subscribers elected to opt out of the Settlement Class

13   belies such a position. (Dkt. No. 178-2 at 10.) Finally, Plaintiffs do not argue that their rights were not

14   justly protected by adequate representation and there is no evidence before the Court that would permit it

15   to make such a finding. The Kansas Supreme Court has pointed out the close relationship between notice

16

17       [6] Although this argument is not before the Court, it is worth noting that the language in the order
approving the *Benney* Settlement is not identical to the language in the release at issue in *Matsushita*, and
18   the *Benney* language could be read to imply some limitation on the release. Specifically, the order releases
Sprint from claims "that were or could have been alleged in the *Benney* matter." (Dkt. No. 178-2 at 18.)
19   In contrast, the *Matsushita* settlement released "all claims arising out of the Matsushita-MCA
acquisition," the plain language thereby not limiting release to only those claims that could have been
20   brought in the jurisdiction where the settlement agreement was approved. *See Matsushita*, 516 U.S. at
371. However, the difference in language is of no moment here. Defendant Sprint PCS has its principal
21   place of business in Kansas; therefore, the Court is aware of no reason why a Kansas state court would
not have had jurisdiction over Plaintiffs' claims, had Plaintiffs chosen to bring them there. *See, e.g.*,
22   *Montgomery v. Sprint Spectrum, L.P.*, No. 07-2227, 2007 WL 3274833, at *1 (D. Kan. Nov. 6, 2007)
(Texas resident plaintiff filed a class action petition in Kansas state court alleging that Sprint "has been
23   and is deceptively and improperly charging her as a Sprint wireless telephone customer a 'Texas Margin
Fee Reimbursement' since January 2007."). Thus, Plaintiffs' claims are such that they could have been
24   alleged in the action which gave rise to the settlement, and are encompassed by the language of the
release.
25

26   ORDER – 9

1  and the concept of "adequate representation:" "Notice to absent members of the class . . . is the greatest

2  single safeguard against inadequate representation." *Shutts*, 567 P.2d at 1314. Simply put, if Plaintiffs did

3  not believe the proposed settlement appropriately addressed their interests, they should have either

4  objected to it, or opted out.

5      Next, Plaintiffs urge the Court to read the Settlement Agreement and its implementing order to

6  encompass only claims related to a "regulatory fees" surcharge, not implicating an excise tax surcharge

7  such as for Washington's B&O tax. The reading Plaintiffs press contradicts the plain language of the

8  Agreement and the order approving the settlement. The latter releases Sprint from liability for "any and

9  all claims that were or could have been alleged in the *Benney* matter, including but not limited to claims

10 which relate in any way to allegations that . . . Sprint failed properly to disclose or otherwise improperly

11 charged for <u>surcharges, regulatory fees *or* excise taxes</u> . . . ." (Dkt. No. 178-2 at 18) (emphasis added).

12     Finally, Plaintiffs argue that "the claims in the Kansas case relate solely to collections prior to the

13 'effective date' of the settlement, which is alleged to be in March 2007. Sprint continued to collected

14 [*sic*] B&O tax surcharges after that date." (Pls.' Reply 3 n.3 (Dkt. No. 183).) Plaintiffs cite no evidentiary

15 or legal support for this conclusory statement and it is simply insufficient to rebut the case Sprint makes

16 for summary judgment. Moreover, the Court reads the plain language of the order approving the *Benney*

17 Settlement to make a distinction between *claims* that arise after the effective date and *damages* that

18 accrue thereafter, but flow from claims that arose prior to the effective date. The order releases Sprint

19 from liability for "*claims* which relate in *any way* to allegations that, on or before the Effective Date . . . ,

20 Sprint failed properly to disclose or otherwise improperly charged for surcharges . . . ." (Dkt. No. 178-2

21 at 18) (emphasis added).

22 **IV.   CONCLUSION**

23     For the foregoing reasons, the Court finds that Plaintiffs' claims are barred by the *Benney*

24 Settlement Agreement and GRANTS Sprint's Motion for Summary Judgment. (Dkt. No. 176.) Plaintiffs'

25 claims are DISMISSED in their entirety and Plaintiffs' Motion for Partial Summary Judgment is

26 ORDER – 10

1    accordingly DENIED as MOOT. (Dkt. No. 175.)

2         SO ORDERED this 20th day of February, 2008.

3

4

5    John C. Coughenour
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER – 11