UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER W. HESSE, et al.,

Plaintiffs,

v.

SPRINT SPECTRUM L.P., et al.

Defendants.

CASE NO. C06-0592JLR

ORDER DENYING PLAINTIFFS'
MOTION FOR
RECONSIDERATION

## I.    INTRODUCTION

Before the court is Plaintiffs' motion for reconsideration (Dkt. # 262) of the

court's January 9, 2012 order granting in part and denying in part Plaintiffs' motion for

limited discovery prior to Defendants' motion to compel arbitration (Dkt. # 261).  On

January 20, 2012, the court directed Defendants to file a response to Plaintiffs' motion

pursuant to Local Rule CR 7(h)(3).  (Jan. 20, 2012 Order (Dkt. # 265) (citing Local Rules

W.D. Wash. CR 7(h)(3).)  Defendant Sprint Spectrum L.P. d/b/a Sprint PCS ("Sprint")

filed a memorandum in opposition to Plaintiffs' motion for reconsideration on February

ORDER- 1

1, 2012.  (Resp. (Dkt. # 266).)  Having considered Plaintiffs' motion and supporting

documents, as well as Defendants' response, the court DENIES Plaintiffs' motion for

consideration, but clarifies its prior order as described below.

## II.    BACKGROUND AND ANALYSIS

On January 9, 2012, the court granted in part and denied in part Plaintiffs' motion

seeking limited discovery prior to the court's consideration of Defendants' motion to

compel arbitration.  (Jan. 9, 2012 Order (Dkt. # 261).)  Plaintiffs seek reconsideration of

that portion of the court's order denying discovery into whether and when Plaintiffs

entered into an agreement to arbitrate.  (*See generally* Mot.)[1]  The court denied this

aspect of Plaintiffs' motion for discovery because, during the course of this long

litigation, Plaintiffs had previously conceded that their "relationship" with "Sprint is

governed by the Terms & Conditions of Service."  (*See* Jan. 9, 2012 Order (Dkt. # 261) at

5-6.)  In so ruling, the court cited two briefs previously filed by Plaintiffs in which

Plaintiffs made this specific admission, as well as Sprint's November 1, 2001[2] and

August 1, 2002 Term & Conditions.[3]  (*Id.* at 6.)

---

[1] In their motion for reconsideration, Plaintiffs also seek "clarification" that the court "has not yet decided which version of the Sprint [Terms & Conditions] may apply to plaintiffs."  (*See* Mot. (Dkt. # 262) at 3.)  The parties have not asked the court to resolve this issue, and therefore it has not.

[2] In the January 9, 2012 order, the November 1, 2001 Terms & Conditions are inadvertently referred to as the "November 1, 2011 Terms & Conditions."  However, the citation to the record noted by the court plainly refers to the November 1, 2001 Terms & Conditions. (*See* Jan. 9, 2012 Order at 6 (citing Dkt. # 175-2 Ex. 1 at SPRINT-PCS-HO 000025).)

[3] The court cited these two versions of the Terms & Conditions simply because they were both relied upon by Plaintiffs in their motion for partial summary judgment, and both of these

ORDER- 2

1    Significantly, both the November 1, 2001 and August 1, 2002 Terms & Conditions

2    contain broad arbitration clauses.  (*See* Moore Decl. (Dkt. # 175-1) Ex. 1 (Nov. 1, 2001

3    Terms & Conditions) at SPRINT-PCS-HO 000033 ("Any claim, controversy or dispute .

4    . . related directly or indirectly to the services . . . shall be resolved by arbitration . . . ."),

5    Ex. 2 (Aug. 1, 2002 Terms & Conditions) at SPRINT-PCS-HO 000062 ("Any claim,

6    controversy or dispute of any kind between the customer and the company . . . shall be

7    resolved by final and binding arbitration . . . .").)  Nevertheless, in its motion to compel

8    arbitration, Sprint did not rely on the arbitration clauses contained within the Terms &

9    Conditions in effect at the time that Plaintiffs initially entered into their relationships with

10   Sprint, but rather on the arbitration clauses contained within the Terms & Conditions in

11   effect at the time Plaintiffs terminated their relationships with Sprint.  (*See* Mot. to

12   Compel Arb. (Dkt. # 253) at 3-4, 6-7; Brenner Decl. (Dkt. # 177) Ex. 6 at SPRINT-PCS

13   HO 000118; Skok Decl. (Dkt. # 245) Ex. A at 1, 9.)  The Terms & Conditions that Sprint

14   relied upon contain not only arbitration provisions, but class action waiver provisions as

15   well – which were absent in the earlier versions of the Terms & Conditions relied upon

16   by Plaintiffs.[4]  (*See* Brenner Decl. Ex. 6 at SPRINT-PCS HO 000118; Skok Decl. Ex. A

17   at 1, 9.)

18

19   _____

20   versions of the Terms & Conditions contain the following identical statements:  "Your
     agreement . . . with Sprint is made up of these Terms and Conditions ("Terms") and the Service
     Plan that we agree to provide to you."  (*See, e.g.,* Pl. Mot. for Part. S.J. (Dkt. # 175) at 2.)

21       [4]As Plaintiffs point out class action waivers were absent in the November 1, 2001, May 1,
     2002, June 1, 2003, November 24, 2003, and May 25, 2004 versions of the Terms & Conditions.
22   (*See* Mot. at 2 (citing Dkt. # 117 Exs. 2-4, 7-8).)

1    Plaintiffs' motion is directed in particular at their asserted need for discovery

2    concerning Sprint's position that they are bound by a later Terms & Conditions

3    containing a class action waiver.  (*See* Mot. at 3.)  Plaintiffs have acknowledged that their

4    relationship with Sprint is governed by the Terms & Conditions of Service in effect at the

5    time they initially became customers of Sprint, and there is no dispute that this version of

6    the Terms & Conditions contains an arbitration clause.  Implicit in Plaintiffs' motion for

7    reconsideration is the idea that the court will necessarily need to decide in conjunction

8    with Sprint's motion for arbitration which version of the Terms & Conditions is

9    applicable, whether it contains a class action waiver, and whether Plaintiffs have thereby

10   waived class arbitration.  (*See generally id.*)  Accordingly, the court must decide whether

11   this issue concerning class action waiver is relevant to its decision on arbitrability, and

12   therefore, whether it should reconsider its order denying discovery that Plaintiffs assert is

13   relevant to that issue.

14   The Supreme Court has provided guidance on this issue.  In general, issues of

15   arbitrability are for the courts, while procedural issues are left to arbitrators.  *See, e.g.*,

16   *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  The Supreme Court

17   has explained that "questions of arbitrability" include "the kind of narrow circumstance

18   where contracting parties would likely expect a court to have decided the gateway matter

19   . . . ."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).  The *Howsam*

20   Court further explained that "'procedural questions which grow out of the dispute and

21   bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to

22   decide."  *Id.* at 84 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557

ORDER- 4

1    (1964) (italics in original)).  The court, therefore, must determine if the issue of class

2    arbitration waiver is a "gateway" issue that it should decide or a procedural issue that

3    should be reserved for the arbitrator if the court ultimately orders arbitration.

4            In *Green Tree Financial Corporation v. Bazzle*, 539 U.S. 444 (2003), the parties

5    agreed to submit their dispute to an arbitrator, but disagreed whether class arbitration was

6    permitted under the agreement, which was silent on the issue.  *Id.* at 447-48.  A plurality

7    of the Supreme Court concluded that "whether the contracts forbid class arbitration . . .

8    concerns neither the validity of the arbitration clause nor its applicability to the

9    underlying dispute. . . ."  *Id.* at 452.  Thus, it was a procedural question concerning

10   "contract interpretation and arbitration procedures," which "[a]rbitrators are well situated

11   to answer."  *Id.* at 453.  Consequently, the plurality in *Bazzle* would reserve the issue of

12   class arbitration waiver for the arbitrator.

13           Even though *Bazzle* does not have the full weight of Supreme Court precedent, it

14   is nevertheless persuasive and instructive authority.  *Thalheimer v. City of San Diego*,

15   645 F.3d 1109, 1127 n.5 (9th Cir. 2011) ("[W]e follow the [Supreme Court] plurality

16   opinion as persuasive authority, though 'not a binding precedent.'" (quoting *Texas v.

17   Brown*, 460 U.S. 730, 737 (1983))).  Many other courts have concluded likewise.  *See,

18   e.g.*, *Scout.com, LLC v. Bucknuts, LLC*, No. C07-1444 RSM, 2007 WL 4143229, at *5

19   (W.D. Wash. Nov. 16, 2007) (concluding that, in light of *Bazzle*, it was for the arbitrator

20   to decide the procedural issue of whether plaintiffs can arbitrate as a class, and collecting

21   similar cases); *Vaughn v. Leeds, Morelli & Brown, P.C.*, 315 Fed. App'x 327, 329 (2d

22   Cir. 2009) (citing *Bazzle* and concluding that the district court properly compelled

1  arbitration on question of the arbitrability of class claims); *Guida v. Home Sav. of Am.,*

2  *Inc.,* 793 F. Supp. 2d 611, 616-17 (E.D.N.Y. 2011) (citing *Bazzle*, "[t]he Court concludes

3  . . . that the ability of a class to arbitrate a dispute where the parties contest whether the

4  agreement to arbitrate is silent or ambiguous on the issue is a procedural question that is

5  for the arbitrator to decide"); *JSC Surgutneftegaz v. President & Fellows of Harvard*

6  *Coll.,* 04 Civ 6069(RMB), 2007 WL 3019234, at *2 (S.D.N.Y. Oct. 11, 2007) (quoting

7  *Bazzle* and stating that "arbitrators are well situated to answer the question 'whether

8  contracts forbid[] class arbitration'"); *Smith v. The Cheesecake Factory Rests., Inc.*, No.

9  3:06-00829, 2010 WL 4789947, at *2 (M.D. Tenn. Nov. 16, 2010) (citing *Bazzle* and

10  stating that the "issue as to whether the parties agreed to class arbitration is to be resolved

11  by the arbitrator").[5]

12

13  _____

14  [5] In *Stolt-Nielsen S.A. v. AnimalFeeds International Corporation*, --- U.S. ---, 130 S. Ct. 1758 (2010), the court addressed *Bazzle* in *dicta*, stating:

15      [T]he parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration . . . .
16      In fact, however, only the plurality decided that question.  But we need not revisit that question here . . . .

17  *Id.* at 1772.  Although the *Stolt-Nielsen* Court pointed out that *Bazzle* did not have the same precedential value as a majority opinion, the Court did not conclude that the *Bazzle* plurality was
18  incorrect on the issue of who decides whether a class can arbitrate a dispute.  *Stolt-Nielsen* held that "a party may not be compelled under the [Federal Arbitration Act] to submit to class
19  arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Id.* at 1775 (italics in original).  The Supreme Court, however, emphasized that the parties had
20  stipulated that the arbitration clause was silent on class arbitration and that they had reached no agreement on the arbitrability of class-wide claims.  *Id.* at 1775-76 & n.10.  Because the parties
21  stipulated that they had reached no agreement, the Supreme Court had "no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action
22  arbitration."  *Id.* at 1776, n.10.  Neither did the *Stolt-Nielsen* Court have occasion to decide the threshold issue of whether the court or the arbitrator should decide the arbitrability of class-wide

1         In resolving the present issue, the court finds *Vilches v. The Travelers Companies,*

2   *Inc.*, 413 Fed. App'x 487 (3d Cir. 2011), to be particularly instructive.  In *Vilches*, the

3   parties were in disagreement regarding whether the arbitration agreement signed at the

4   beginning of the plaintiff's employment or the revised arbitration policy that the

5   defendant introduced later in the employment relationship, and which contained a class

6   arbitration waiver, governed their dispute.  *Id.* at 490.  Despite the parties' agreement to

7   arbitrate all employment disputes irrespective of which provision governed, the district

8   court addressed the question of class action waiver and found, based on correspondence

9   of the defendan,t that the defendant had provided sufficient notice of the revised policy,

10  and that the plaintiff's electronic consent and continued employment constituted

11  agreement to the revised policy.  *Id.*

12        The Third Circuit reversed the district court, stating that "the issue of whether [a

13  plaintiff] is bound by a disputed amendment to [an] existing [contract] falls within the

14  scope of this expansive agreement to arbitrate."  *Id.* at 491.  The Third Circuit  reasoned:

15        While the parties framed their arguments so as to invite the Court's
      attention to the class action waiver issue – namely, whether the revised

16        Arbitration Policy expressly prohibiting class arbitration governs the
      relationship between [defendant] and [plaintiff] – we conclude that "the

17        relevant question here is what *kind of arbitration proceeding* the parties
      agreed to."  *Bazzle*, 539 U.S. at 452 . . . (emphasis in original). . . .

18        Assuming binding arbitration of all employment disputes, the contested
      waiver  provision  solely  affects  the  type  of  procedural  arbitration

19

20  claims.  *See Yahoo! Inc. v. Iversen*, No. 11-CV-03282-LHK, 2011 WL 4802840, at *2 (N.D. Cal.

21  Oct. 11, 2011); *Guida*, 793 F. Supp. 2d at 616 ("[W]hile *Stolt-Nielsen* pointed out that *Bazzle* did
not have the same precedential value as an opinion by a majority of the Court, it did not indicate

22  that the plurality opinion in *Bazzle* was incorrect on the issue of who decides whether a class can
arbitrate a dispute.").

ORDER- 7

1    mechanism applicable to this dispute. The Supreme Court has made clear
2    that questions of contract interpretation aimed at discerning *whether* a
     particular procedural mechanism is authorized by a given arbitration
3    agreement are matters for the arbitrator to decide. . . . Where contractual
     silence is implicated, "the arbitrator and not a court should decide whether a
4    contract [was] indeed silent on the issue of class arbitration," and "whether
     a contract with an arbitration clause forbids class arbitration." *Stolt–*
5    *Nielsen S.A. v. AnimalFeeds Int'l Corp*., --- U.S. ---, 130 S. Ct. 1758, 1771–
     72, . . . (2010).

6    The Policy originally in force made no mention of class action or class
7    arbitration, and was entirely silent on whether the parties had a right to
     proceed through class or collective arbitration.  In contrast, the amended
8    Policy explicitly precludes class arbitration.  Accordingly, we must "give
     effect to the contractual rights and expectations of the parties," and refer the
9    questions of whether class arbitration was agreed upon to the arbitrator.
     *Stolt–Nielsen*, 130 S.Ct. at 1774.

10   *Vilches*, 413 Fed. App'x at 492 (italics in original; some citations, quotations, and text

11   modifications omitted).

12        Similar to the parties in *Vilches*, the parties here are in dispute regarding whether

13   an earlier version of the Terms & Conditions, which contains an arbitration clause but is

14   silent as to class action waiver, or a later version of the Terms & Conditions, which

15   contains both an arbitration clause and a class action waiver, is applicable.  As in *Vilches*,

16   this issue goes to the procedural mechanisms available at arbitration, and thus is a

17   procedural issue that should be left for the arbitrator to decide, assuming that arbitration

18   is ordered.  Because this issue is appropriately reserved for the arbitrator should Sprint

19   prevail on its motion to compel arbitration, the court declines to reconsider its order

20   denying discovery that Plaintiffs assert would be relevant to this issue.

21

22

ORDER- 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### III.   CONCLUSION

Based on the foregoing, the court DENIES Plaintiffs' motion for reconsideration (Dkt. # 262).

Dated this 17th day of February, 2012.


_____
JAMES L. ROBART
United States District Judge

ORDER- 9